[Cite as *Cleveland v. Brown*, 2016-Ohio-5405.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103458

# CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

# MICHAEL D. BROWN

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case Nos. 2014-CRB-033481 and 2014-CRB-034492

**BEFORE:** Celebrezze, J., Jones, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** August 18, 2016

**ATTORNEY FOR APPELLANT**

Edward F. Borkowksi, Jr.
P.O. Box 609151
Cleveland, Ohio 44109


**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
Director of Law
BY:    Verlinda L. Powell
        Angela Rodriguez
Assistant City Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Appellant, Michael D. Brown, appeals his domestic violence, aggravated menacing, unlawful restraint, and using a firearm while intoxicated convictions in two criminal cases. He argues his convictions should be reversed because they are against the manifest weight of the evidence, were tainted by improper "other acts" evidence, and his trial counsel was ineffective. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

**{¶2}** Police arrived at a home on East 138th Street in Cleveland, Ohio on November 29, 2014. They had been summoned by a 911 call from Shaina Bray. As officers approached the house, they heard shouting coming from within. The officers knocked and announced themselves, but no one answered and the house grew quiet. Officers again knocked, with no response. Through a window in the door, Officer Michael Kovach observed a male walk by an open doorway down the hall. He saw that the man had a soft-shell rifle case. The officers knocked and announced themselves twice more before appellant finally came to the door. Appellant's hand was bleeding, and he appeared intoxicated. When police entered the home, they observed broken glass on the floor in a number of places and a broken mirror in the bathroom off the kitchen. Officers interviewed appellant and Bray, and eventually arrested appellant.

**{¶3}** Appellant was charged in Cleveland M.C. No. 2014-CRB-033481 with

violating Cleveland Codified Ordinances ("C.C.O.") 621.06, first-degree misdemeanor aggravated menacing; C.C.O. 627.04, first-degree misdemeanor using a weapon while intoxicated; and C.C.O. 621.08, third-degree misdemeanor unlawful restraint. In Cleveland M.C. No. 2014-CRB-034492, appellant was charged with violating R.C. 2919.25, domestic violence, a first-degree misdemeanor; C.C.O. 621.06, aggravated menacing, a first-degree misdemeanor; C.C.O. 627.04, using a weapon while intoxicated, a first-degree misdemeanor; and C.C.O. 621.08, unlawful restraint, a third-degree misdemeanor.

{¶4} At trial, Bray testified about the incidents that formed the basis of the two cases, one occurring on November 25, 2014, and the other on November 29, 2014. She testified that on November 25, she and appellant were at appellant's home on East 138th Street, where she was staying. They were discussing recent events involving appellant's mother when appellant became upset. He proceeded to break some glass objects by throwing them. Bray attempted to exit the home. She left the living room where they had been arguing and attempted to head through the dining room, toward the kitchen, and out the side door. Appellant jumped on her and knocked her to the ground on top of shards of glass as she was passing through the dining room. She sustained cuts to her forearm and her hip. According to Bray, appellant held her there for five to ten minutes, covering her mouth to prevent her from screaming. He then took her cell phone so she could not call police. The next day, appellant apologized and Bray decided not to report the incident to police at that time.

{¶5} On November 29, appellant and Bray were out celebrating. They returned to appellant's house with drinks and snacks to continue the celebration. After some time, appellant and Bray began to argue. Bray testified that appellant began breaking household items again. At some point, appellant retrieved a soft-shell gun case that hung on the kitchen wall and pulled a shotgun from inside. Bray testified that he pointed the gun at her and he stated that she was not leaving the house. She managed to lock herself in the bathroom located off the kitchen and called 911. Appellant eventually forced his way into the bathroom and threatened Bray with the gun; informing her that she could not leave the house. Appellant then punched the mirror on the bathroom wall, shattering it and cutting his hand. The two then heard officers knock on the door, and appellant left the bathroom.

{¶6} These events, as testified to by Bray, were different from her written statements given to police the night of the second incident and the following day. In her statement given to Officer Kovach, she indicated appellant had threatened her with a gun on November 25, as well as November 29. However, Bray testified appellant only brandished a firearm on November 29. Bray also admitted to being convicted of criminal damaging relating to damage done to appellant's mother's vehicle prior to the above incidents. Further, Bray was the subject of various civil and criminal protection orders obtained by appellant's mother. Appellant's mother also testified that Bray did not live with appellant at the East 138th Street address. Appellant's mother testified that she lived at that address with appellant and Bray could not possibly have lived there because

the protection orders prohibited Bray from contacting her.

{¶7} After the city rested, the trial court dismissed the charge of using a weapon while intoxicated in Case No. 2014-CRB-034492, because Bray testified that appellant did not possess a firearm during the November 25 affray. The jury found appellant guilty of the remaining charges. The trial court set the matter for sentencing after ordering a presentence investigation report.

{¶8} At a sentencing hearing, the court imposed an aggregate 90-day jail sentence. It imposed 180-day jail terms on each of the first-degree misdemeanors, with 90 days suspended. It also imposed 60-day jail terms on each count of unlawful restraint. The court found that appellant violated terms of community control when he committed these acts. The court terminated community control and sentenced appellant to 90 days in jail. The court ordered all terms to run concurrent to each other, and ordered appellant to be subject to three years of active community control.

{¶9} Appellant then filed the instant appeal, assigning three errors for review:

I. Appellant's convictions were against the manifest weight of the evidence.

II. The trial court erred by permitting "other acts" testimony in violation of Evid.R. 404(B) and 403(A).

III. Appellant's trial counsel was ineffective.

## II. Law and Analysis

### A. Manifest Weight

{¶10} Appellant first claims that his convictions for domestic violence, unlawful

restraint, aggravated menacing, and using a firearm while intoxicated are against the manifest weight of the evidence.

{¶11} Domestic violence, as defined in R.C. 2919.25, states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Aggravated menacing, as defined in C.C.O. 621.06 provides, "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his or her immediate family." Unlawful restraint, as defined in C.C.O. 621.08, provides "[n]o person, without privilege to do so, shall knowingly restrain another of his or her liberty." Finally, C.C.O. 627.04 defines the offense of using a firearm while intoxicated: "No person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance." While the city produced sufficient evidence to meet each of the elements for these crimes, appellant attacks the credibility of that evidence.

{¶12} When a party challenges the verdict in a case as against the manifest weight of the evidence, the party is attacking the credibility of the evidence presented. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In determining whether a conviction is against the manifest weight of the evidence, this court sits as a "thirteenth juror," reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and determines "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State*

*v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). When this court determines that a criminal conviction is against the manifest weight of the evidence, it must do so with the utmost caution and only for the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶13} Within this assigned error, appellant attacks the credibility of the victim and the use of her testimony to establish the elements of the aforementioned crimes. Appellant asserts that Bray's version of events substantively changed between her initial reports to officers who responded the night of November 29, 2014, her written statements given to an investigating detective the following day, the testimony she gave at a domestic violence protection order hearing, and her testimony at trial.

{¶14} Indeed, Bray's account of events changed over time. Officer Kovach testified that Bray told him that appellant had threatened her with a gun on November 25 as well as November 29, 2014. However, Bray's testimony at trial indicated that appellant did not threaten her with a gun on November 25, 2014. Bray's written statement given to Cleveland Police Detective Nicole Biggers on November 30, 2014, also included an allegation that appellant threatened Bray with a firearm on November 25. Additionally, Bray gave statements to police indicating that appellant struck her in the temple on November 25, causing her to fall on broken glass. At trial, she testified that appellant jumped on her back, causing her to fall on broken glass.

{¶15} Bray's trial testimony does not stand in isolation. While details of her testimony changed, some of her testimony was corroborated by others. Officer Kovach

testified that upon arriving at appellant's home, he heard shouting coming from inside. He observed appellant carrying a soft-shell gun case that was later found in the home in a back room off the kitchen. That gun case contained a shotgun identified by Bray as the weapon with which appellant threatened her. Kovach observed broken glass on the floor in multiple rooms of the house and saw the broken mirror in the bathroom that Bray testified appellant had punched.

{¶16} Appellant also points to Bray's testimony minimizing her ingestion of alcohol on November 29 and contrasting it with previous statements. Appellant additionally highlights the issues between his mother and Bray as reason for Bray to fabricate these incidents. Bray indicated she accepted responsibility for and admitted her role in damaging appellant's mother's car, for which she was prosecuted in a criminal case.

{¶17} Appellant also asserts that Bray was not a household member because no evidence was provided that Bray lived with appellant, and she testified at a previous hearing that she lived elsewhere. Appellant's mother also testified that Bray did not live with appellant. In fact, appellant's mother testified that Bray and appellant were not even dating at the time of these incidents. However, Officer Kovach testified that Bray had clothing, including clothes belonging to her two children at the home, and she informed him that she also had other household items at the home. Bray also testified she lived with appellant.

{¶18} After reviewing all the evidence including Bray's contradictory statements,

this court cannot say that this is the exceptional case where the jury clearly lost its way in convicting appellant of domestic violence, aggravated menacing, unlawful restraint, and using a weapon while intoxicated.

{¶19} The using a weapon while intoxicated charge was corroborated by Officer Kovach's testimony. He observed appellant carrying a soft-shell gun case. That case was later found and from which a shotgun was recovered. Officer Kovach also testified that appellant admitted to being intoxicated after his arrest. Bray had injuries to her arm and hip that were observed and documented by Officer Kovach and his partner. Bray testified that appellant held her down for several minutes on one occasion and held her at gunpoint on another. Also, when appellant threatened her with a firearm, Bray testified she felt scared for her life and she begged appellant not to kill her.

{¶20} The deviations between Bray's trial testimony and written statements do not so seriously damage her credibility as to render her testimony unbelievable. The jury heard those discrepancies and was in a better position to judge her credibility after viewing the live, in-person testimony of all the witnesses. This is not the exceptional case where the weight of the evidence is clearly in favor of acquittal of the charged crimes. This assignment of error is overruled.

## B. Other Acts Evidence

{¶21} Appellant also points to several instances in Bray's testimony that he claims constituted impermissible testimony of other acts used to insinuate that appellant acted in conformity therewith. Bray testified a few times that appellant would get angry and it

was like a switch was flipped where he would get aggressive, throw things, or punch walls. She testified that these sorts of arguments had happened in the past. She also testified that she had to seek a protection order against appellant and that appellant was following her and harassing her. However, she testified appellant had never hit her prior to the November 25, 2014 incident.

**{¶22}** The trial court enjoys broad discretion in the admission of evidence. Generally, this court would not reverse a trial court's decision on the admission of evidence absent an abuse of that discretion. *Shimola v. Cleveland*, 89 Ohio App.3d 505, 511, 625 N.E.2d 626 (8th Dist.1992). But here, appellant did not object to any of the statements that he now claims were improperly admitted. Therefore, he has waived all but plain error. *State v. Herron*, 8th Dist. Cuyahoga No. 99110, 2013-Ohio-3139, ¶ 17. "Plain error is only recognized where, but for the error, the result of the trial would clearly have been otherwise." *Id.*, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

**{¶23}** "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." (Citation omitted.) *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15. This exclusion and exceptions to this broad prohibition are codified in R.C. 2945.59 and Evid.R. 404.

**{¶24}** R.C. 2945.59 provides,

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶25}** Further, Evid.R. 404 sets forth similar guidance:

(A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:

> (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
>
> * * *

(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶26}** A trial court must also factor in any unfair prejudice that such evidence

would enure to a criminal defendant at trial. Evid.R. 403(A) states, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 20.

**{¶27}** Here, Bray's testimony consisted of statements that appellant had anger issues and would become aggressive during arguments as if a switch had been flipped in his mind. He would then throw things or punch a wall. She specifically testified that he was never physically violent towards her or threatened her life prior to the November 25, 2014 incident. This testimony was not offered to show that appellant acted in conformity with a particular character trait. This is clear given that Bray testified that appellant never acted in a similar fashion in the past.

**{¶28}** When similar general character testimony was adduced in a case before the Fifth District, it ruled that it did not rise to the level of plain error. *State v. Mills*, 5th Dist. Richland No. 10CA119, 2011-Ohio-5793, ¶ 110-119. There, evidence about a defendant's prior inclination toward violence and prior acts of manipulation and threats was deemed admissible to explain a fight that occurred between neighbors. *Id*. at ¶ 110.

**{¶29}** Further, the evidence here was germane to whether Bray had a reasonable fear for her safety — an element of aggravated menacing. *See State v. Conkle*, 2d Dist. Montgomery Nos. 24161 and 24163, 2012-Ohio-1772, ¶ 49. Here, the evidence does not rise to the level of plain error. Even if Bray's statements did constitute other acts evidence, most of the questions posed by the city did not seek to illicit testimony of prior acts and responses and were not highlighted by the city. The brief statements related to appellant's anger management issues did not prejudice appellant. Bray's testimony could not be confused by the jury that appellant was acting in conformity with past incidents or a character trait because she stated that he had never before been physically violent towards her or threatened her life. Therefore, the outcome of the trial would not have clearly been different had the evidence been properly objected to and stricken.

**{¶30}** Appellant's second assignment of error is overruled.

### C. Ineffective Assistance of Counsel

**{¶31}** Finally, appellant argues that counsel was constitutionally ineffective for allowing other acts testimony without objection.

**{¶32}** To establish ineffective assistance of counsel, first, appellant must show that

there was a "'substantial violation of any of defense counsel's essential duties to [their] client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.'" *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623 (1976), *vacated in part on other grounds*, *Lytle v. Ohio,* 438 U.S. 910, 98 S.Ct. 3134, 57 L.Ed.2d 1154 (1978).

**{¶33}** The first prong examines whether counsel's representation "'fell below an objective standard of reasonableness.' Furthermore, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002), quoting *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bradley* at 142, quoting *Strickland* at 694.

**{¶34}** A licensed attorney is given great deference in the representation of a criminal defendant. *Strickland* at 689. A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Bradley* at 141.

**{¶35}** As set forth above, the testimony that appellant had anger issues in the past but that he acted distinctly different from those past events does not fall within the category of evidence precluded by Evid.R. 404 when it was not offered to show that he

acted in conformity therewith. Therefore, trial counsel was not ineffective for failing to object to this testimony.

{¶36} Even if this court were to presume that the evidence above constituted inadmissible other acts evidence, "[f]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). This is because

> "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir.2006).

{¶37} Appellant's counsel could have chosen not to object to the brief comments Bray made about past arguments between her and appellant as a trial tactic as to not draw attention to those statements.

{¶38} Appellant's third assignment of error is overruled.

### III. Conclusion

{¶39} Appellant's convictions for domestic violence, aggravated menacing, unlawful restraint, and using a firearm while intoxicated are not against the manifest weight of the evidence. Further, the brief statements Bray made about past arguments she had with appellant did not rise to the level of plain error. Finally, appellant's counsel was not ineffective in failing to object to these statements.

{¶40} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

LARRY A. JONES, SR., A.J., and
TIM McCORMACK, J., CONCUR